UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH FOSTER ARDIS,

           Plaintiff,                 Case No. 2:18-cv-13537
                                     District Judge Linda V. Parker
v.                                Magistrate Judge Anthony P. Patti

ROSILYN JINDAL and
TAMMRA S. ROTHHAAR,

           Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 41 & 45)

**I.**     **RECOMMENDATION**: The Court should **GRANT** Defendants' motions for summary judgment with regard to Plaintiff's federal claims (ECF Nos. 41 & 45), and decline to exercise supplemental jurisdiction over his state law claims for gross negligence and intentional infliction of emotional distress (ECF No. 2, ¶¶ 15-18).

**II.**     **REPORT**

    **A.**     **Background**

        **1.**     **Factual Background**

On October 1, 2018, while incarcerated at Chippewa Correctional Facility (URF) in Kincheloe, Michigan, Plaintiff Kenneth Foster Ardis, proceeding *in pro*

*per*, filed the instant lawsuit in the United States District Court for the Western District of Michigan.  (ECF No. 1.)[1]  The case was transferred to this Court on November 14, 2018, and that same day, Plaintiff filed an amended complaint against physician assistant Rosilyn Jindal and a Jane Doe nurse, in their individual capacities, under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment, mental and emotional distress in violation of federal law,[2] and gross negligence and infliction of emotional distress under MCL 691.1401, *et seq.*  (ECF No. 2, ¶¶ 1, 6-8, 15-18.)  On April 9, 2019, the Court ordered Plaintiff to identify the Jane Doe nurse named in his amended complaint (ECF No. 26), and on April 15, 2019, Plaintiff identified her as Tammra Rothhaar (ECF No. 27).  The Court subsequently directed the Clerk of the Court to substitute Rothhaar for Jane Doe in the amended complaint.  (ECF No. 29.)

The underlying facts, as alleged, are as follows.  At all times relevant to the lawsuit, Plaintiff was confined at the Gus Harrison Correctional Facility (ARF) in

---

[1] According to the Offender Tracking Information System (OTIS), Plaintiff absconded from parole on December 18, 2019. https://www.michigan.gov/corrections/, "Offender Search."  Thus, we have no current address for Plaintiff.

[2] Plaintiff failed to indicate which federal law he believed Defendants violated in this second cause of action, and it simply seems like an extension of his Eight Amendment deliberate indifference claim.

Adrian, Michigan.  (ECF No. 2, ¶ 5.)  According to Plaintiff, PA Jindal was an

MDOC employee serving as a physician assistant at URF, and nurse Rothhaar was

an MDOC employee serving as a registered nurse at URF.  (ECF No. 2, ¶¶ 7-8.)[3]

On November 14, 2017, Plaintiff sent a medical kite to health care complaining of

pain in his knees and feet.  (ECF No. 2, ¶ 9.)  In late November, nurse Rothhaar

examined Plaintiff.  Although she noticed severe swelling in his knees and abscess

on both his feet, she only offered Tylenol until he could be seen by a doctor.  (ECF

No. 2, ¶ 10.)  About one week later, PA Jindal examined Plaintiff and said she

could not do much for his feet beyond suggesting he buy a pumice stone from the

prisoner store.  (ECF No. 2, ¶ 11.)  As a result of Defendants' inadequate medical

care, Plaintiff suffered severe pain and mental distress until his transfer to another

correctional facility the following month.  The swelling in his right knee made it

difficult for Plaintiff to walk.  (ECF No. 2, ¶¶ 12-13.)

On November 15, 2017, Plaintiff filed a grievance (ARF-2017-11-2741-

12E), listing the incident date as November 14, 2017, and complaining that he

submitted a kite for swollen knees and foot pain, but that an unidentified nurse

only had him soak his feet, and could not give him a "valid answer" when he asked

---

[3] URF refers to Chippewa Correctional Facility and appears to be a typographical error.  From Plaintiff's grievance and other documentation in the record, it is clear that the alleged incidents at issue occurred while Plaintiff was incarcerated at Gus Harrison Correctional Facility (ARF).  (ECF No. 2, ¶ 5; ECF No. 41-3.)

about a doctor or specialist.  (ECF No. 41-3, PageID.168; ECF No. 43,

PageID.187; ECF No. 45-3, PageID.232.)  Plaintiff did not name nurse Rothhaar or

PA Jindal on this Step I grievance form, although nurse Rothhaar actually served

as the respondent at Step I, albeit apparently only in her "capacity as the nursing

supervisor."  (ECF No. 41-3, PageID.168-169; ECF No. 41-4, PageID.171-172;

ECF No. 43, PageID.187-188; ECF No. 45-3, PageID.232-233.)  The Step I

grievance response was signed on December 7, 2017.  Per her investigation, nurse

Rothhaar stated that Plaintiff was seen by a registered nurse on November 10,

2017, for knee and foot pain, and she scheduled Plaintiff for foot soaks to remove

callouses, told him he did not meet the criteria for shoes, and offered Tylenol for

discomfort.  Further, nurse Rothhaar stated that on November 17, 2017, Plaintiff

told the nurse he needed knee replacements, an injection, and shoes, in response to

which Plaintiff was told he would need to buy his own shoes and that injections

were not performed at ARF.  (ECF 41-3, PageID.169; ECF No. 43, PageID.188;

ECF No. 45-3, PageID.233.)  Additionally, the summary in the Step I response

reads:

> The pt. does have much discomfort in his knees and feet.  They are no
> X-rays documented of his knees.  We did discuss the shoe issue and he
> tells me he cannot afford to buy shoes.  He asks if he can have a cane
> as he is having difficulty walking due to knee pain and swelling.  I
> spoke with the [medical provider] MP on site.  A cane was issued for a
> month.  She told me to schedule him an MP appointment so his knees
> and feet can be evaluated and an XR can be ordered if indicated.  His
> callous's did not get scrapped [sic], so I have made him an appointment

4

> for that to be done.  This was all discussed with him and he verbalized
> understanding.  Grievance partially resolved at Step One.

(ECF No. 41-3, PageID.169; ECF No. 43, PageID.188; ECF No. 45-3,

PageID.233.)

Plaintiff filed his Step II appeal on November 21, 2017, stating that he told

"health service nurses" he needed assistance with his knees and feet, but they only

suggested cold compresses which would not alleviate the arthritis and rheumatism

in his knees, and denied him access to a doctor to seek medical advice.  (ECF No.

41-3, PageID.166; ECF No. 43, PageID.186; ECF No. 45-3, PageID.230.)  The

Step II grievance response, dated December 20, 2017, contains a summary of the

investigation conducted, including that Plaintiff was prescribed a cane and Tylenol

for the pain, and indicates that Plaintiff had been transferred to another correctional

facility (IBC) the previous day.  (ECF No. 41-3, PageID.167, ECF No. 43,

PageID.189; ECF No. 45-3, PageID.231.)

Finally, Plaintiff filed a Step III appeal received by the MDOC Office of

Legal Affairs on January 25, 2018.  (ECF No. 41-3, PageID.166; ECF No. 43,

PageID.186; ECF No. 45-3, PageID.230.)[4]  As his reason for appeal, Plaintiff

stated that at IBC, he was told he needed replacements, so he should not have had

---

[4] The Step III appeal appears on the same form as Plaintiff's Step II appeal. Its
submission date is not specified, but the form contains a stamp which indicates that
it was received by the MDOC Office of Legal Affairs on January 25, 2018.  (ECF
No. 41-3, PageID.166; ECF No. 43, PageID.186; ECF No. 45-3, PageID.230.)

to go through all the pain he went through at ARF.  (ECF No. 41-3, PageID.166; ECF No. 43, PageID.186; ECF No. 45-3, PageID.230.)  He also indicated that a January 12, 2018 appointment "to see a MP" had been cancelled so he was still walking around in pain.  (ECF No. 41-3, PageID.166; ECF No. 43, PageID.186; ECF No. 45-3, PageID.230.)  Ultimately, however, Plaintiff's Step III appeal was rejected as untimely on March 23, 2018.  The Step III grievance response states:

> In accordance to PD 03.02.130 grievances are to be rejected when untimely.  Pursuant to policy, this grievance was untimely filed by the grievant at the Step III appeal.  The grievant's Step III appeal was to be received by January 4, 2018, however it was not received until January 25, 2018.

(ECF No. 41-3, PageID.165; ECF No. 45-3, PageID.229.)

## 2.    Instant Motions

On July 8, 2019, nurse Rothhaar filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or for summary judgment pursuant to Fed. R. Civ. P. 56(a), asserting that: (1) Plaintiff failed to exhaust his administrative remedies because he did not name nurse Rothhaar in his Step I grievance, rather she was the respondent to the grievance; and (2) Plaintiff failed to state a claim under 42 U.S.C. § 1983 because, as the ARF nursing supervisor in November 2017, she had no personal involvement in treating Plaintiff's knee and feet issues and, thus, did not know of and disregard Plaintiff's allegedly serious medical needs.  (ECF No. 41, PageID.135-144.)

PA Jindal filed her own motion for summary judgment pursuant to Rule 56 on August 16, 2019, arguing also that Plaintiff failed to exhaust his administrative remedies, but on the basis that his Step III appeal was rejected as *untimely*, and that Plaintiff's claims against her fail as a matter of law because: (1) her limited involvement in Plaintiff's medical care could not amount to deliberate indifference in violation of the Eighth Amendment; and (2) under MCL 691.1407, gross negligence is an exception to qualified immunity, not a claim itself, and Plaintiff did not meet the requirements for a medical malpractice claim.  (ECF No. 45, PageID.211-217.)

Plaintiff responded to nurse Rothhaar's motion on July 25, 2019 (ECF No. 43), but did not file a response to PA Jindal's motion as directed to do so by the Court.  Instead, he filed: (1) an affidavit asserting that PA Jindal was directly involved in his case (ECF No. 48); (2) a motion for an extension of time to file the response, in which he claimed that the documents demanded were needed for a proper response, and which was granted by text order on October 4, 2019 (ECF No. 49); and, (3) a motion for an order compelling discovery (ECF No. 50), which the Court ultimately denied (ECF No. 52).  Although Plaintiff alluded to invoking Fed. R. Civ. P. 56(d) in his motion for an extension of time to file his response to PA Jindal's motion for summary judgment (ECF No. 49, PageID.318), he never filed a response making such an argument, did not support the request by affidavit

or declaration, and did not give specific reasons why he was unable to present facts essential to justify his opposition. Pursuant to Fed. R. Civ. P. 56(d), "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

### B.   Rule 56 Summary Judgment standards apply

As both Defendants and Plaintiff have presented evidence beyond the pleadings, and the Court has considered and relied upon such evidence to make its recommendation regarding Defendants' motions, it is appropriate to apply the Rule 56 rather than Rule 12(b)(6) standard. As Fed. R. Civ. P. 12(d) specifies: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Plaintiff was given a reasonable opportunity to respond, including an extension, and knew enough to file an affidavit with respect to PA Jindal's motion and a declaration with a health care record with respect to nurse Rothhaar's motion. (*See* ECF No. 43, PageID.182, 185; ECF No. 48, PageID.316.)

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The

9

nonmovant must . . . do more than simply show that there is some metaphysical

doubt as to the material facts[.] . . . [T]here must be evidence upon which a

reasonable jury could return a verdict in favor of the non-moving party to create a

genuine dispute.") (internal quotation marks and citations omitted).  In other

words, summary judgment is appropriate when the motion "is properly made and

supported and the nonmoving party fails to respond with a showing sufficient to

establish an essential element of its case . . . ."  *Stansberry*, 651 F.3d at 486 (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule

56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient

treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338,

344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary

judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema,

N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"

*Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788

(6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315

(11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary

judgment, a party cannot rely on allegations or denials in unsworn filings and that a

party's "status as a pro se litigant does not alter [this] duty on a summary judgment

motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a *pro se* plaintiff because he "failed to present

any evidence to defeat the government's motion").

> ### C.    Both defendants are entitled to summary judgment on Plaintiff's § 1983 claims against them because Plaintiff failed to exhaust his administrative remedies

> #### 1.    Exhaustion under the PLRA

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq*.,

a prisoner may not bring an action "with respect to prison conditions under section

1983 of this title, or any other Federal law . . . until such administrative remedies

as are available are exhausted."  42 U.S.C. § 1997e(a).  Congress enacted the

provision to address the "outsized share" of prisoner litigation filings and to ensure

that "the flood of nonmeritorious claims does not submerge and effectively

preclude consideration of the allegations with merit."  *Jones v. Bock*, 549 U.S. 199,

203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the

quantity and improve the quality of prisoner suits[.]"  *Porter v. Nussle*, 534 U.S.

516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to

correct its own mistakes with respect to the programs it administers before it is

haled into federal court, and it discourages disregard of [the agency's] procedures."

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation

omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim.  *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.")  Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court."  *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (citations omitted).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit."  *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .").  However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim."  *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA.  *Id*. at 212-13.  As such, defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

### 2.    Grievance procedures at the MDOC

Pursuant to Policy Directive 03.02.130, dated July 9, 2007, the administrative remedies available at the MDOC are as follows.[5]  First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue.  (ECF Nos. 41-2 & 45-4, ¶ P.)  If the issues are not resolved, within five business days, the inmate may file a Step I grievance using the appropriate form.  (ECF Nos. 41-2 & 45-4, ¶ P.)  "Dates, times, places, and names of all those involved in the issue being grieved are to be included."  (ECF No. 41-2 & 45-4, ¶ R.)  The inmate should receive a response at Step I within 15 business days of filing the grievance.  (ECF Nos. 41-2 & 45-4, ¶ X.)

---

[5] This policy directive was superseded on March 18, 2019, but was in effect when Plaintiff filed the relevant grievance.  Thus, all references herein are to the 2007 Policy Directive.

If the inmate is dissatisfied with the Step I disposition or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form.  (ECF Nos. 41-2 & 45-4, ¶ BB.)  As with Step I, the inmate should receive the Step II response within 15 business days.  (ECF Nos. 41-2 & 45-4, ¶ CC.)

Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance.  (ECF Nos. 41-2 & 45-4, ¶ FF.)  "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions."  (ECF Nos. 41-2 & 45-4, ¶ FF.)  The matter is fully exhausted after the disposition of the Step III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

### 3.    Plaintiff's Step III grievance was untimely and, therefore, unexhausted

Both nurse Rothhaar and PA Jindal argue in their motions for summary judgment that Plaintiff failed to exhaust his administrative remedies, but on different bases.  Nurse Rothhaar asserts that Plaintiff failed to specifically name

14

her in his Step I grievance in accordance with PD 03.02.130 and, thus, "although ARF-2017-11-2741-12e was pursued through Step III, it functioned to exhaust the administrative remedies against the treating nurse *only*, and not nurse Rothhaar, who did not treat [Plaintiff]."  (ECF No. 41, PageID.138-141.)  On the other hand, PA Jindal argues that Plaintiff's Step III appeal was rejected as untimely, rather than denied, "and thus Plaintiff has not properly exhausted his administrative remedies against Defendant because the MDOC rejected this grievance instead of providing a merits-based response at all steps."  (ECF No. 45, PageID.213.)

Nurse Rothhaar is correct that Plaintiff failed to specifically name her in his Step I grievance, referring only generally to a nurse; nor did Plaintiff name PA Jindal.  (ECF No. 41-3, PageID.168; ECF No. 43, PageID.187; ECF No. 45-3, PageID.232.)[6]  And, as provided above, MDOC policy requires that inmates include the "[d]ates, times, place, and names of all those involved in the issue being grieved" in their initial grievance.  (ECF Nos. 41-2 & 45-4, ¶ R); *see also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  An exception to this rule is made "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits . . . ."

---

[6] Nurse Rothhaar was, in fact, the respondent to Plaintiff's Step I grievance, as she asserts, but apparently only in her capacity as a nursing supervisor.  (ECF No. 41-3, PageID.168-169; ECF No. 41-4, PageID.171-172; ECF No. 43, PageID.187-188; ECF No. 45-3, PageID.232-233.)

*Id*. at 325.  In other words, if an inmate commits a procedural error, but receives merits-based responses at "each step" of the grievance process, the inmate has properly exhausted his claim.  *Cook v Caruso*, 531 F. App'x 554, 563 (6th Cir. 2013).

As PA Jindal asserts, however, Plaintiff did not receive merits-based responses at all three steps of the grievance process.  Rather, the MDOC rejected Plaintiff's Step III appeal as untimely, stating, "The grievant's Step III appeal was to be received by January 4, 2018, however it was not received until January 25, 2018."  (ECF No. 41-3, PageID.165; ECF No. 45-3, PageID.229.)  The grievance reports attached to Defendants' motions for summary judgment demonstrate that the Step II response was returned to Plaintiff on December 20, 2017 (ECF No. 41-3, PageID.166-167), so pursuant to Policy Directive 03.02.130, Plaintiff was required to ***send*** his completed Step III grievance to the Grievance and Appeals Section by January 4, 2018, ten business days from the above date (ECF Nos. 41-2 & 45-4, ¶ FF).  But the record demonstrates that the MDOC did not ***receive*** Plaintiff's Step III appeal until January 25, 2018 (ECF No. 41-3, PageID.165-166; ECF No. 43, PageID.186; ECF No. 45-3, PageID.229-230), and Plaintiff does not challenge the rejection of his Step III appeal in response to the instant motions by arguing either good cause for the delay or that he timely ***sent*** the Step III appeal in accordance with PD 03.02.130 ¶ FF, though it was ***received*** late.  Nor is there an

16

explanation as to why it would take three weeks to reach the grievance coordinator if timely sent. Instead, he simply states in his response to nurse Rothhaar's summary judgment motion that he exhausted his administrative remedies because he filed Step I and II forms, both of which were denied, and sent in Step III, which was also denied, and fails to address exhaustion at all in his affidavit with regard to PA Jindal's summary judgment motion. (ECF No. 43, PageID.179-180; ECF No. 48.) He provides no analysis or proof of the timeliness of his Step III grievance. Further, although the MDOC grievance reports attached to Defendants' motions for summary judgment contain a February 28, 2018 letter written by Plaintiff in which he states that he sent a grievance in a timely manner and has proof of such, it appears to be connected to a different grievance (ARF-17-12-3054-28e), as it mentions side effects from pills prescribed by a doctor who is not a defendant to this suit, and Plaintiff did not attach the letter to either his response or the affidavit. (ECF No. 41-3, PageID.164; ECF No. 45-3, PageID.228.) Thus, Plaintiff has offered no evidence that he challenged the procedural rejection of his Step III appeal during the grievance process either. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. Accordingly, Defendants satisfied their burden of proving that Plaintiff failed to

exhaust his administrative remedies, and are entitled to summary judgment of his § 1983 claims against them.  *Surles*, 678 F.3d at 456; *see Gardner v. Mich. Dep't of Corrections*, No. 18-1609, 2018 WL 8454299, at *4 (6th Cir. Dec. 18, 2018) ("Because these grievances were rejected for procedural reasons, they do not suffice to exhaust Gardner's claims."); *Spiller v. Stieve*, No. 1:18-cv-692, 2019 WL 2527801, at *3 (W.D. Mich. May 13, 2019) ("Plaintiff's grievance was denied on the merits at steps I and II.  Plaintiff pursued his grievance to step III, however, his grievance appeal was filed several weeks late and was, therefore, rejected as untimely.  Plaintiff does not dispute that this grievance was properly rejected as untimely filed.  Plaintiff has failed to identify any other grievance regarding these events which he properly pursued through all three steps of the prison grievance process.") (internal citations omitted).  Although only PA Jindal argues the untimeliness theory in support of her failure to exhaust administrative remedies defense, nurse Rothhaar, while also alleging failure to exhaust administrative remedies, comes at it from a different angle, *i.e.*, Plaintiff's failure to *name* her.  But she has, in fact, raised a "failure to exhaust" affirmative defense, and the undisputed untimeliness of the Step III grievance inures to her benefit as well.[7]

---

[7] As Plaintiff's Eighth Amendment claims against Defendants may be summarily dismissed based on his failure to exhaust administrative remedies, the Court need not address Defendants' additional arguments related to those claims.  Although I am recommending that the Court refrain from exercising supplemental jurisdiction over the remaining state law claims, I do note in passing that under MCL

### 4.      Nurse Rothhaar was not specifically named in the grievance

Nurse Rothhaar is also correct in her assertion that she was not named in

Plaintiff's grievance.  Instead, Plaintiff merely referred to "license[d] nurses" (at

Step I) and "health care nurses" (at Step II). (ECF No. 41-3, PageID.166, 168.)

The only nurse mentioned in his Step III  grievance is "RN Jerry Ruiz[,]" who is

merely alleged to have checked test results for him. (ECF No. 41-3, PageID.166.)

"Under the Department of Corrections' procedural rules, inmates must include the

'[d]ates, times, places and *names of all those involved* in the issue being grieved' in

their initial grievance."  *Reed-Bey*, 603 F.3d at 324 (emphasis added). "The point

of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity'

to address grievances on the merits, to correct prison errors that can and should be

corrected and to create an administrative record for those disputes that eventually

end up in court." *Id.* (quoting *Woodford.* 548 U.S. at 94-95).

Plaintiff does not benefit from the fact that nurse Rothhaar happened to be

the one who, as an investigating nurse supervisor, responded to his initial

grievance.  There is no hint of acknowledgment within that response that she was

aware of being a target of the grievance, and her affidavit makes clear that, as a

supervisor, she "rarely saw or treated patients," did not see or treat Plaintiff in late

---

691.1407, gross negligence is an exception to qualified immunity, not a claim in
and of itself.  *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011).

November 2017 or on the date alleged in the grievance, and does "not recall ever seeing or treating Ardis as a nurse." (ECF No. 41-3, PageID.169; ECF No. 41-4, PageID.171-172.)  Although the Court recognizes that Plaintiff disputes nurse Rothhaar's alleged lack of involvement and points out that there is one record indicating that she was involved in *ordering him a cane* <u>on December 7, 2017</u> (ECF No. 43, PageID.181, 185), it remains that she was not identified in the grievance.  The fact that nurse Rothhaar wrote the Step I response in the third person emphasizes the point that she was not aware of being a target.

Accordingly, the Court should find "that Plaintiff has failed to properly exhaust his administrative remedies as to the claims asserted in this matter." *Spiller*, 2019 WL 2527801, at *3.  If it does so, all remaining defendants should be dismissed, and the Court need not consider any of the other bases for dismissal.

### D.    Conclusion

The Court should **GRANT** Defendants' motions for summary judgment with regard to Plaintiff's federal claims against them (ECF Nos. 41 & 45).  Should the Court agree with the above recommendation, which would dispose of Plaintiff's federal claims, the only claim remaining would be Plaintiff's state law claim for gross negligence and intentional infliction of emotional distress, over which the Court should decline to exercise supplemental jurisdiction.  28 U.S.C. § 1367(c).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).   Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).   Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.   Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.   Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.   Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).   The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc*.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  January 14, 2020                    s/*Anthony P. Patti*_____
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE


### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record
on January 14, 2020, electronically and/or by U.S. Mail.

                                            s/Michael Williams_____
                                            Case Manager for the
                                            Honorable Anthony P. Patti